**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                              Case No.  6:12-cr-302-Orl-28KRS

**ALEXANDER LEE**
_____

## ORDER

Defendant has been charged in a two-count Indictment (Doc. 1) with child pornography offenses, and he has filed a pretrial Motion to Suppress Statements and Derivative Evidence (Doc. 23). The Court held a hearing on the motion on March 29, 2013. (See Hr'g Mins., Doc. 40). As set forth below, the motion is granted in part as to Defendant's statements but is denied as to the remaining statements and as to the seized evidence.

### I. Background

On October 2, 2012, a United States Magistrate Judge issued a warrant authorizing the search of, and seizure of evidence from, Defendant's apartment in Kissimmee, Florida. At around 8 o'clock in the morning on October 9, 2012, ten officers from several law enforcement agencies went to the apartment to execute the warrant. Defendant was asleep when the officers arrived, but he opened the door when the officers knocked.

Neil Burdick, a Special Agent with the Department of Homeland Security, testified at

the suppression hearing that when Defendant opened the door, Burdick told him to come out and put his hands on the wall because they had a warrant to search the residence. Defendant was patted down at that point, but he was not arrested. While some of the officers searched the apartment and seized computers and other evidence, Burdick questioned Defendant in Burdick's unmarked car in the parking lot of the apartment complex. Burdick recorded the interview, and a compact disc and a transcript of the interview have been filed with the Court. (Gov't Hr'g Exs. 1 & 2).

It is undisputed that Burdick read Defendant his Miranda[1] rights prior to questioning him, but the parties dispute whether Burdick nonetheless violated Defendant's Fifth Amendment right to remain silent and whether statements made by Defendant were voluntary rather than the product of coercion. Defendant seeks suppression of "any and all statements made by the Defendant" and "any derivative evidence seized" based on Defendant's statements. (Doc. 23 at 2).

## II. Discussion

The Fifth Amendment to the U.S. Constitution provides in part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that prosecutors "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless [the prosecutor] demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. The protections of Miranda

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

apply to "custodial interrogation"—"questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," id.—and as a threshold matter here the parties dispute whether Defendant was in custody at the time of the interview.

For Miranda purposes, "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." Howes v. Fields, 132 S. Ct. 1181, 1189 (2012). "In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" Id. (alteration in original) (quoting Stansbury v. California, 551 U.S. 818, 322-23 (1994), and Thompson v. Keohane, 516 U.S. 99, 112 (1995)). In making this assessment, "courts must examine 'all of the circumstances surrounding the interrogation.'" Id. (quoting Stansbury, 551 U.S. at 325). The Howes Court listed as among relevant factors "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." Id. (citations omitted).

Defendant asserts that he was subjected to a custodial interrogation because a reasonable person in his position would have understood that his movement was restrained to the degree associated with a formal arrest. Defendant notes that he had been removed from his apartment by numerous armed police officers executing a search warrant; that he was taken to a police vehicle for interrogation; that he was never told he was free to leave; that the officers told him that they were not leaving the residence until they were finished

searching; and that Burdick read him his Miranda rights.  On the other hand, in arguing that Defendant was not in custody, the Government emphasizes that Burdick merely asked Defendant if he would talk to him "if he didn't mind"; that Defendant was not restrained, handcuffed, or taken to a police station; that Defendant was not charged that day; and that Defendant was questioned while sitting in an unmarked police car in the apartment complex parking lot where other people were present.

Having considered the totality of the circumstances as revealed by the interview transcript and Burdick's hearing testimony, the Court concludes that a reasonable person in Defendant's position would not have felt that he was at liberty to end the interrogation and leave.  Defendant had been awakened by armed officers with a search warrant, and Burdick testified that when Defendant opened the door, Burdick told him to come out and put his hands on the wall because they were there with a search warrant.  Although Burdick did not arrest Defendant or tell him he was under arrest, Burdick did grab Defendant by the shirt and lead him out of the apartment to the wall and patted him down.  Burdick then went into the apartment, leaving Defendant outside with a visibly armed Osceola County Deputy Sheriff. When Burdick came back out of the apartment, he asked Defendant if he would talk to Burdick and another officer in the parking lot.  Burdick then directed Defendant to his unmarked car; Defendant, who was either barefoot or at most wearing flipflops, sat in the passenger seat, while Burdick sat in the driver's seat and another officer sat in the backseat behind Defendant.

In sum, just before the questioning began, Defendant had been forcibly removed from his apartment, patted down, and "instructed" to go the parking lot in the midst of ten law

enforcement officers who, he was told, were not going to leave until they were finished thoroughly searching his apartment. Defendant was seated in an unmarked law enforcement vehicle with one armed officer immediately behind him and another to his left. Moreover, Burdick read Defendant his Miranda rights, which "may be considered as some evidence by a reasonable person that he is in custody." Tukes v. Dugger, 911 F.2d 508, 515 n.10 (11th Cir. 1990).[2] Considering all of these circumstances, the Court concludes that a custodial interrogation occurred.

The next question is whether Burdick violated Defendant's right to remain silent by not ceasing questioning upon an invocation of that right by Defendant during the interview. Defendant argues that he invoked his right to remain silent by answering "No" when Burdick initially asked him if he wanted to talk; by stating "I'm not waiving my rights" after Burdick read him his rights and asked whether Defendant waived them; and by not responding to a question about whether child pornography would be found on his computer. However, the interview transcript does not support a finding of a violation on any of these bases.

At the beginning of the interview, Burdick told Defendant he would like to talk to him and Defendant responded "uh-huh." (Ex. 2 at 00003 l.19). Burdick then asked Defendant

---

[2]Relying on another footnote in Tukes, Defendant argues that "the Eleventh Circuit Court of Appeals has stated that the reading of Miranda rights by law enforcement to a defendant transforms a non-custodial interrogation into a custodial interrogation." (Doc. 38 at 6 (citing footnote 11 of Tukes)). However, the Eleventh Circuit did not explicitly endorse this "transformation" concept in footnote 11, though in footnote 10—quoted in the text—the Tukes court referred to the reading of Miranda rights as "some evidence" that may be considered on the issue of custody. This Court accordingly has considered Burdick's reading of rights as some, but not conclusive, evidence on this point. The "transformation" concept is discussed in more depth in the Eighth Circuit's decision in United States v. Harris, 221 F.3d 1048 (8th Cir. 2000), upon which Defendant also relies.

if he was "in a state of mind where [he] can talk to [Burdick] right now," and Defendant responded "No. . . . Half a dozen guys with guns just barged into my apartment. Of course I'm not in a state of mind." (Id. at 00003 l.23 to 00004 l.5). As explained by Burdick and as supported by the recording of the interview, Defendant had been handed the search warrant and was reading it at that point, and he was concerned about officers being in his apartment and about his computer being seized. (See id. at 00004-00005). When Burdick told Defendant that the officers would be in the apartment until the search was completed, Defendant then said "What do you want to know?" and Burdick read him his Miranda rights. (Id. at 00005). Burdick asked Defendant if he was willing to waive those rights and talk to him, and Defendant responded, "I'm not waiving my rights." (Id. at 00006 l.1). However, Burdick then explained to Defendant, "Well, you are waiving your Miranda rights if you want to talk to me," and Defendant promptly responded, "What do you want to know then?" (Id. at 00006 ll.2-4).

An accused who wants to invoke his right to remain silent must do so unambiguously. Berghuis v. Thompkins, 130 S. Ct. 2250, 2260 (2010); accord Medina v. Singletary, 59 F.3d 1095, 1100 (11th Cir. 1995). Moreover, a waiver of rights may be implicit rather than express. Berghuis, 130 S. Ct. at 2261. Although Defendant did state at one point that he was not waiving his rights, Defendant reinitiated the questioning when he said "What do you want to know then?" immediately after Burdick clarified that if Defendant wanted to talk, he would be waiving his rights. Such a clarifying statement is not impermissible, and Defendant did not unambiguously invoke his right to remain silent but instead expressed a willingness to talk in response to Burdick's clarifying statement. See, e.g., Medina, 59 F.3d at 1105

(finding that the defendant's response to a clarifying question "indicated that [the defendant] had not invoked his right to remain silent and the interview properly continued").

Finally, the Court rejects Defendant's contention that his failure to respond to a question about whether child pornography would be found on his computer amounts to invocation of the right to remain silent. A mere pause, hesitation, or silence in response to a question does not amount to an unambiguous invocation of the right to remain silent, and Burdick did not violate Defendant's right to remain silent by asking him more questions when Defendant did not respond to that question.

In addition to arguing that his right to remain silent was violated by continued questioning, Defendant also asserts that his statements were not voluntary but instead were coerced by threats. This argument has merit in at least one respect. Shortly after the questions recounted above, Burdick told Defendant that if he cooperated, Burdick could tell the prosecutor that he was cooperative; Burdick also told Defendant that if he did not cooperate, Burdick would tell the prosecutor that he was not cooperative. (Ex. 2 at 00008 l.20 to 00009 l.2). This last statement was not proper and is of the type that courts have found to constitute impermissible coercion. See United States v. Ramirez, 112 F.3d 849, 853 (7th Cir.) ("There are indeed steps that police might take in conjunction with or in advance of giving the Miranda warnings that would nullify or at least undermine them—for example, telling the suspect that if he refuses to talk to them his lack of cooperation will be reported to the prosecutor."), cert. denied, 522 U.S. 892 (1997); United States v. Harrison, 34 F.3d 886, 891-92 (9th Cir. 1994) ("[T]here are *no* circumstances in which law enforcement officers may suggest that a suspect's exercise of the right to remain silent may result in

harsher treatment by a court or prosecutor."); United States v. DeLaurentiis, 629 F. Supp. 2d 68, 75-76 & n.12 (D. Me. 2009) (collecting cases and finding "that the DEA threats to 'tell the judge' if [the defendant] did not cooperate were coercive and that her resulting statements were involuntary"). The threat of reporting a lack of cooperation renders Defendant's post-threat statements involuntary, and none of the statements made after that point in the interview may be used as evidence at trial.

Defendant additionally seeks suppression of "derivative evidence" that was allegedly seized based on his involuntary statements. However, there is no record support for the existence of any such "derivative evidence." The transcript reflects that at the end of the interview, Defendant was willing to show the searching detectives where items were located on the computer, and Burdick and Defendant walked toward the apartment. Burdick asked the officers engaged in the search and seizure if they needed Defendant's assistance finding anything on the computers; Burdick was told that no assistance was needed. (Ex. 2 at 000047-48). There is no basis upon which it could be concluded that any information provided by Defendant led to seizure of any evidence that had not already been seized. Moreover, the evidence seized from Defendant's apartment would have been discovered during the lawful search under the search warrant in any event. Cf. Nix v. Williams, 467 U.S. 431, 444 (1984) (holding that evidence that "ultimately or inevitably would have been discovered by lawful means" is properly received in evidence). Thus, none of the evidence seized from Defendant's apartment will be suppressed, and Defendant's motion is denied insofar as it seeks suppression of evidence rather than statements.

III. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** that the motion to suppress (Doc. 23) is **GRANTED in part** and **DENIED in part** as set forth herein.

**DONE** and **ORDERED** in Orlando, Florida on this 10th day of April, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Alexander Lee